Next argued case is number 19-2198, Realtime Data LLC v. Reduxio Systems, Inc., Mr. Liddell. Good morning and thank you, Your Honor. May it please the Court, Brian Liddell on behalf of Realtime Data. The patents at issue in this case all claim subject matter that's patent eligible. They claim improvements to computer functionality, something that this is patent eligible in a clear line of cases from DDR to ENFISH to TALIS to visual memory. These are claims that are probably most similar to those in the visual memory case, and that case dictates the result here. These are claims directed to improving computer functionality by improving the way that data compression is utilized by a computer or computer system in order to make the computers functioning more efficient, faster, and better. It was a new and novel manner of use of compression and how to configure compression systems, and that is exactly the kind of claim that this Court holds to be patent eligible. Do you think that this is something that should be decided at step one or step two? I think, Your Honor, we think that under step one, these claims are clearly not directed to an abstract idea, and therefore, it could easily be resolved at step one. However, even if the Court were to disagree, we think there is significant inventive contribution in the ordered combination of the steps and the claim elements that would require reversal under step two as well, and we also think that there are significant fact questions surrounding that that make it very inappropriate to decide, especially on a step two ground, at the pleading stage. All right. There's a lot that is absent from the District Court's analysis, and we can talk about that, but what, other than the ultimate conclusion, did the District Court say that you think is just wrong, a wrong statement of the law or a wrong description of the patent claims? So, I think a couple of key elements, Your Honor, and thank you for the question. We think that the District Court's statement of the law, and I'll start there, is fundamentally incorrect in that the District Court really failed to analyze or explain or claims directed to improvements in computer functionality. Prior to the hearing on this matter, the District Court had requested that each party identify the case from this Court that it believed was most akin to the claims at issue here. We identified the visual memory case to the Court because we believed and continue to believe that it presented the closest analog in terms of the of why it disagreed or even how it understood the visual memory case. It never cited it in the discussion. Obviously, the discussion is very limited since it's only the transcript and there's no written order. In terms of the factual matter or the description of the claims, we think the District Court fundamentally erred in suggesting that the claims are merely directed to not accurate at all. The claims are directed to changing the configuration or configuring a computer system, and each family is a slightly different variant on this, but configuring a computer system in a new way that makes the computer system function better and more effectively through new ways to use data compression that were not known in the art. And there's a whole lot in the specifications that explain that, as well as the claims themselves, of course. This is just Toronto. Can I just ask you to address the following, and perhaps this reflects, I don't know whether it's A54 to 55 of the appendix, but that's secondary to the substance. One way to view what the District Court held, or at least one way to view the analysis is there are two asserted contributions among these five patents. One, choosing compression techniques by looking at what data is being compressed. And the second is deciding to compress only if you can actually save something, namely the time that compression plus storage of data. That has to be less than the time of simply storing the uncompressed data. And the first point seems rather nonspecific, since there's nothing about what you do with any indication of the content of the data in choosing a compression tool. And the second seems like a statement of a result, again, without any indication of how you decide whether compression is actually going to save time. The lack of specificity and results focus are two things that have been part of our abstract idea law. Why do these claims not fall under that combination? Sure. And thank you, Your Honor. So I think, first of all, both of those concepts that you mentioned are new concepts that respectfully are very different ways of approaching data compression that were not present in the prior art and that changed the way that the systems using these inventions would in an advantageous manner. And that direction toward here's how you configure your computer system to make it work better is precisely where this court's line of cases have said those are not abstract ideas. I would point, for example, to the claim that was discussed in the visual memory case, which was claim one, where the memory configuration was memory that's connectable to a characteristics. And that then those determined the type of data stored by the different cache components. It didn't say what those characteristics had to be or how they were utilized in the claim. But this court recognized that that claim was directed to an improvement to computer functionality, not an abstract idea of just processing data, nor just to a result, as the district court tried to suggest here. I think it's not... So as to the level of specificity, the court's case law makes pretty clear, including in visual memory, that claims aren't eligible or ineligible because of their breadth. And I think that that's... I think you've read these cases as well as I have. Starting at least with EnFISH, I believe it to be the case that every single one of the computer and functionality improvement cases takes pains to use a term like specific and concrete or particular because you need some kind of dividing line no matter how gray the line may be. And so it's not enough to say anything directed at... And anything that aims to improve computer functionality is enough. What we said is anything that is specific and improves functionality. And the question, I guess, is why this is on the eligible side of that line with the focus being on specificity of how to achieve a result, not simply that you're improving the computer because that language essentially is question-begging. I appreciate the question, Your Honor. And I think I would say there are two key aspects to these claims that I think very clearly take them across that line that you're discussing. I think, first of all, the claims don't merely say choose something that works. They talk about choosing how you choose the encoder and how you analyze the data based on a way that's different than the prior art and particularly looking at the actual content of the files and the data that's coming through rather than a file descriptor like .pdf or .doc because... And the specification explains in some detail why that prior approach didn't work very well. And it talks in the specification, for example, about some examples of these kinds of analyses. I'll refer in this instance to the 203 patent, which is the earlier patent in the first family at issue. And column 16, for example, discusses some of these analyses of parameters that you would use and the kinds of analysis that you would do of the data content in order to make these decisions. That's at page 172 of the appendix. It talks about embodiments using that approach, again, in the same patent from column 15 through 20. It explains a very in which there's considerable detail of ways of doing something in a spec, but the claim doesn't require any of them and therefore says something very, very general. And I think these claims do that, namely use something about the content, no further specification, to decide which compression tools to use. Why is that not insufficiently specific? Well, your honor, I guess what I would say is I would quote what this court said in visual memory. Configuring, and this is obviously referring to the claim there, configuring the memory system based on the type of processor connected to the memory system is the improvement in computer technology. And I think that these claims are at that or a higher level of specificity, and that's from page 1261 of the visual memory decision. But certainly these claims are as specific or more so than those held to be patent eligible in visual memory. I can hear that I've reached my rebuttal point. Before you sit down, I have two quick questions. One is that in the judge said, you know, can I look at all these claims together? And you said, well, we can start there or whoever was arguing at the hearing, but that there are a lot of dependent claims that we have to consider. What dependent claims do you think should be viewed differently than just sort of a global big picture without just the global big picture lens? Are there any dependent claims you want us to focus on? Thank you, Your Honor. I think if we were looking at the 203 patent, for example, claim nine is one of the dependent claims that we would suggest has some further important distinctions. I would suggest that in the 530 patents, claims two and four both add important distinctions, as does claims six and 11. There are parallel dependent claims. So in that patent, claims one, 21, and 25 are independent. There are similar dependent claims to some of the other independents. With respect to the 751 patent, I think the dependent claims, these are to claim one, like 21, 22, 23, and 24 all add important components. There are parallel dependent claims to independent claim 25. So I think all of those would be important to consider as well. This is Judge Toronto. Can I just double check? Did you point in your blue brief or your gray brief or in any of the joint appendix excerpts of your oppositions to the motion to dismiss any of those claims? I don't remember seeing anything that is in particular about any of the five claims, one per patent, that other than those five claims, one per patent, that the red brief says are representative. So, Your Honor, I don't recall all of the details of the briefing before the district court. I believe that those were each referenced in the briefing to the four oppositions to the 12B6 motions in Commvault, ICS systems, Pure Storage, and Tegil. And at least in the excerpts that you included in the joint appendix, there's not a single reference to any element of a claim that doesn't appear in the five so-called representative claims. In one of the cases, Tegil, you talk about 751 claim one, but you itemized six elements, every one of which is in 751 claim 25, which is the representative one. So, I'm not sure that you have made any argument to us or shown us that you made any argument in the district court about that any of the claims other than the five matter to the 101 analysis. Well, Your Honor, I guess I would have two suggestions in response to that. The first is, I believe that we discussed both in the blue brief and in the briefing to the district court, the fact that there are a great many dependent claims, and that this was a motion. These were motions brought at the pleading stage directed to essentially all claims in a patent, and it's the defendant's burden under I4I and Section 282 to actually make a showing as to ineligibility. And so, I do think there's a little bit of improper burden shifting in suggesting that all claims have to, a defendant can basically come in and say, well, here's a claim and require the patent owner to then defend all claims, especially where briefing and other constraints limit their ability to do so. That said, I do think we discussed the importance of looking at dependent claims in both the district court and in the blue brief. All right. My second question, and I know your time's up, and I'm sure Judge Newman will give you a little bit of time, but the second question is, in the two decisions where Judge Young and Judge Schrader found the same claims to be patent eligible, what is the status of those cases? Thank you, Your Honor. So, I believe that basically my, I apologize, my recollection is imperfect. I think that at least one of those may have settled, but I believe another is essentially stayed in light of the ruling of the district court in Delaware that's being rescued a cot or collateral estoppel would be relevant, and so I believe that one of them is stayed, but I think one of them may have settled previously. Okay. Thank you. Okay. Let's hear from the other side, and we'll make sure that everyone has time to explore the arguments. Mr. Newcomb. Good morning. May it please the court. I'm not sure the court is because I had a connection problem earlier. Are you able to hear me? I can. Yes, I can. Oh, I hear you. Okay. Thank you so much. May it please the court. Jane Newcomb. I represent Fortinet, and I'm speaking today on behalf of all of the appellees. These five real-time patents all claim in varying ways the use of processors and encoders to compress or decompress different kinds of data using different kinds of compression or decompression techniques. While claiming the use of processors, however, the patents don't claim and are not limited to any particular processor. That's abundantly clear based on the claim language and the specifications. Any off-the-shelf computer, for example, will do. Likewise, while the patents in various... Counsel, can I ask you? I have a threshold issue, and that is a process one. What troubles me the most is that we have virtually nothing, no reasoning from the district court to go on. I mean, the district court essentially just reached a conclusion. I mean, in a few pages where just referred to some broad general issues, even citing McCrow, which went the other way in support of what he was saying, he gives us really nothing to review. Is it really our job to assess these patents, you know, 150 claims across five patents in the first instance? Shouldn't we remand and ask the court to explain itself? We don't think so, and my thinking, Your Honor, would be as follows. Number one, the district court here, we had a, gosh, I think almost a two-and-a-half-hour-long hearing, which included a fair amount of colloquy between the court and counsel on both sides, including some healthy debate under both Alice and Step 1 and Step 2. Even in that colloquy, the court said many things that sounded just wrong, like talking, seeming to confuse 101 with enablement or talking about obviousness. So, I mean, wouldn't it be better if the district court explained that those apparent confusions did not creep into the decision-making? Well, look, I think the obviousness point, as I read that portion of the transcript, it was a choice of language which meant to go to Alice, Step 2, the inventive hook that may be able to get you beyond abstract claims. As to the remainder of your question, I think there's no question that this court's job would be easier had the district court here done a more detailed and, for example, a written opinion. On de novo review, however, under both Third Circuit and Federal Circuit precedent, we're not seeing any requirement that the decision be in written form. And I'm not saying the decision had to be in written form. I mean, I did plenty of rulings from the bench, but when I did, they were very specific, citing to cases, citing to, in a patent context, citing to specific claim language. I mean, and I've seen rulings from the bench from Judge Stark that actually look almost like a full written opinion. So, I'm not saying you can't do it from the bench. I'm saying that isn't there a need to at least issue something that looks like a written opinion or sounds like a written opinion? We don't think so, Your Honor. The way we read the transcript is that Judge Connolly here went through both Step 1 and Step 2 in Alice. And especially on the de novo review, given the face of the patents and their specifications, Your Honor may not be surprised to hear that it's very clear to us how he came to his reasoning on both Step 1 and Step 2. And for the, I mean, on the abstraction reason, there was a repeated back and forth between the court and counsel about, you know, show me what exactly is being claimed. Where do we get away from the abstraction, for example, of using any processor on any kind of data with any coding or encoding technique, selecting data by any attribute or parameter. And if one reads the transcript as a whole, it supports the conclusion that under Step 1, there's a failure. There was, I think... What portions of Judge Love's report and recommendations do you disagree with, other than the ultimate conclusion? Sure. So, you know, there are two. There's the Carbonite and the Action decision. And we have a couple of thoughts. First of all, in the Carbonite recommendation, the discussion of the 728 patent, the overlapping patent between that decision and this case, we respectfully believe that Magistrate Judge Love misread or failed to account for certain portions of the patent specification. For example, Judge Love explained that he thought the 728 was patent eligible due to his understanding that the patent required a specific configuration of different encoders. If it helps, Your Honor, that's at Appendix 785. That's actually incorrect when compared to the specification. If you look, for example, at Appendix 251, Column 16, beginning at Line 35, the patent or the specification is pretty clear that the encoder can be any type. And even content-dependent versus content-independent encoders can, in fact, be the exact same encoder. On Action, Judge Love denied the Alice motion by citing disputes between the parties on claim construction issues. You can see that, for example, at Appendix 807 and Appendix 810. Here, there were no and real-time raised no claim construction disputes to Judge Connolly to get in the way of an Alice analysis. And the third point is not to beat a dead horse, Your Honor, but we found the exchange between the court and counsel in Delaware to be informative and useful to the court and included a fair amount of admissions by my friend at opposing counsel table. And Magistrate Love did not have the benefit of those admissions. Those three thoughts, Your Honor, are, of course, aside from my observation that Judge Love's decisions are not binding on this court, but I think this court knows that. Can you explain why, as to, I guess, one of the two ideas that are talked about as reflected in the five patents here, the one about choosing a compression tool based on some parameter or attribute of the data but not based on some label on the data that tells the system to choose, why is that not a specific enough improvement in an important computer functionality? Thank you. Even at that level of generality, that you don't have to analyze every bit in the data, just something about a data block that gives you a parameter or attribute that you then use to select the compression tool. Sure. So, if I may, let me approach that from two different angles. First, in terms of various of these patents, claiming that you choose your compression or decompression, depending on the patent technique, based on an attribute or parameter of the data or the data block, I think it's important to recognize at the outset that what attribute or parameter of the data should be or is being claimed will be considered is not clear at all. And the specifications make clear that this patentee was trying to claim any and all analysis of or attribute of or parameter of any data. By way of one example from the 728, that column 16, starting line 22, the patent discusses recognizing data types, data structures, data block formats, file substructures, file types, and or any other parameters that may be indicative of the data type or content of a given data block. So, as I read that hook or that limitation within the patent, Your Honor, it's not telling you, for example, that any type of content within a data block would suggest one type of compression or another. Even if it were, it's not telling you what kind of compression you should then apply. And it's certainly not claiming that it has any method or mode of compression, which doesn't already exist in the prior. Does that go to 101, or does that go to enablement? Oh, in this, so as we all have, I've read the case law, and in the last couple of days, I was listening to some recent arguments on ALICE issues, and I know it's easy for the ALICE discussion to get into written description or enablement issues. I don't think that's an issue in this case. For example, everything you said sure sounded like enablement to me. Well, good, then I definitely don't want to waive that defense, Your Honor. There's no question that in the specifications for these patents, that there are numerous examples that an ordinarily skilled artisan would be able to look at and say, I could implement that. For example, in a couple of places, there's a laundry list of known in the prior art coding or encoding techniques. The problem is, if you look at the claim language, it uses these generic terms, and I think quite craftily, the claim language is designed not to be limited. So what we have is a disclosure of examples in this particular instance of what kind of attribute or parameter of the data you might look to. But the patent isn't claiming that and certainly isn't limited to that. You could do the same thing with encoders, the same exercise with the processor, and the same with the kind of data. But beyond my observing that the data parameter or attribute which is used to select the compression technique is not clear, Judge Tarantino, I take your question to be, what about this phrase, which we see in a few of the limitations, that whatever data attribute or parameter you're going to look at in order to choose your unspecified coding or encoding technique, it should be something beyond only looking at the descriptor. And we don't think that changes this analysis for at least two reasons. Often in 101 cases, we find, certainly this is true at the 12B6 stage, because the record amounts to basically the complaint and the patents. Often what we find is that something in the specification confirms that what appears to be in the claim a very general idea is nothing like an improvement. And therefore, that is the example, I guess, or that the particular application of that thought here would be this question. Assuming, as appears to be the case, that parameter and attribute of the data is anything about it that tells you something about the data, with the one exception stated expressly in the claim as an exception, not a descriptor, that choosing compression or decompression techniques based on that, is there anything in the spec that acknowledges that at that level of generality, something under that broad class has been done before? Or is it really quite new to say, in order to decide what compression or decompression tool to use, we're not just going to be looking at what the data tells us by a descriptor, but we're going to at least peek at the actual data? The idea that one would look at something about a data other than the suffix, for example, .doc or .xls has not been argued in this case, nor is there support in the specification that that concept is novel or inventive to use ALICE Step 2 language. And I would further note, Your Honor, that if you read the claim in ALICE Step 2 language, it's not even... I guess my problem is that question in ALICE Step 2 has to do with whether something is so routine and conventional and well known. I guess I'm trying to understand how, for instance, someone could have done these things in their head without a system like this, because I can't imagine how to compress data in my head. So two thoughts there, Your Honor. Number one, I think when we're talking about abstraction, the mental equivalence of a compression... Oh, I just heard my... Please proceed. Please answer the question. Thank you. There are mental equivalence outside of the computer context. For example, stenographers who take shorthand version of transcription or an abbreviation code for language or for numbers. But going to Judge Tarantino's prior question, I think the best indication that this patent is not claiming that there's something particularly special about looking at something beyond the descriptor would be two things. Number one, if you read the claim language, it's not even disavowing looking at the descriptor. You can still do that. And I think as this very broad claim language was designed, you could still be putatively infringing. The limitation is a negative limitation that it you could look at any and all other parts of the attributes or the parameters of the data is right there in the specification. For example, you could look at the data types, the data structures, the DAVOC formats, the file substructures. And I've already read portions of this quotation before, so I won't do it again. But the suggestion that choosing an unspecified compression method or an unspecified type of data based on an unspecified attribute or parameter, which attribute or parameter can be something beyond just the file name suffix, is right there in the intrinsic evidence for the patents. Okay. Any more questions for Mr. Newcomb, Judge O'Malley, Judge Taranto? No, thank you. No, thanks. All right. Thank you to the court. Thank you. We'll hear from Mr. Liddell in three minutes. Thank you, Your Honor. I want to start with a question Judge Taranto asked a moment ago about anything in the specification that suggests that choosing compression based on the content of the data was something that was known in the art or conventional. And the answer to that question is unequivocally no. The specifications make clear that that was something new. That wasn't how compression was used in the past. And indeed, if we look, for example, at the 203 patent, the specification talks about the prior art as either using essentially a one-size-fits-all approach where you use one encoder no matter what you're using, file descriptors, the file extension as the means of choosing an encoder, and that it criticizes both of those approaches and explains why the approach the patent takes to compression is advantageous and will allow for these improvements in the computer functioning. And I think that's discussed heavily in the background section of each of the patents. If we look at the 203 specification, for example, that would be in columns 1 to 3, which is at pages 165 to 166 of the appendix. I also want to go back to something that my friend suggested a number of times about specifying in the claims the nature of the parameter or the analysis that this court performed, and I know I keep coming back to the visual memory case, but if we look at the claim that was considered there, it recited one or more programmable operational characteristics of a processor, and that those programmable operational characteristics determine the type of data stored in the cache. It didn't recite what those characteristics had to be or how they were programmed in the claims, and the court didn't suggest that it was reading in some limitation. That was something that was not necessary to decide the 101 question, and I think this goes to the point Judge O'Malley raised. Sometimes those questions of breadth might go to other issues under section 112 or section 102 or 103, but they don't go to eligibility, and I think that's exactly parallel to the claims here. I would suggest that they're written with somewhat more specificity than the claim in visual memory, but they certainly meet the standard that the court articulated and applied in that case, and that continues to be the rule as far as we understand it. If there are other questions, I'm happy to address them, but I know I'm right up at the edge. No, thank you. Judge Toronto? No, thanks. Okay, thanks to both counsel. This case is taken under submission. Thank you, Your Honor.